**SO ORDERED.**

**SIGNED this 17 day of October, 2014.**



Austin E. Carter
United States Bankruptcy Judge
**Austin E. Carter**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 13-52027-AEC |
| Lorraine Banks, | ) | |
| | ) | Chapter 13 |
| Debtor. | ) | |
| | ) | |
| Lorraine Banks, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | Contested Matter |
| | ) | |
| Kam's Auto Sales, | ) | |
| | ) | |
| Respondent. | ) | |

Before

Austin E. Carter
United States Bankruptcy Judge

Counsel

    For Debtor/Movant:    Laura D. Burns
                                      200 N. Jefferson Street
                                      Milledgeville, Georgia 31061

    For Respondent:       Daniel Wilder
                                      544 Mulberry Street, Suite 800
                                      Macon, Georgia 31201

# M E M O R A N D U M   O P I N I O N

This contested matter comes before the Court on the Debtor's Motion to Hold Respondent in Contempt of Court. In this Motion, the Debtor alleges a violation of the automatic stay under § 362(a) of the Bankruptcy Code.[1] The alleged violator, Kam's Auto Sales (Kam's), filed a Response, and the Court held a hearing on August 25, 2014. Proceedings to determine whether the automatic stay has been violated are core proceedings under 28 U.S.C. § 157(b). The Court states its findings of fact and conclusions of law separately pursuant to Federal Rule of Civil Procedure 52, made applicable in this case by Federal Rule of Bankruptcy Procedure (Bankruptcy Rule) 7052, which is, in turn, made applicable to this contested matter through Bankruptcy Rule 9014(c).

## F INDINGS OF F ACT

The Debtor filed a Chapter 13 Voluntary Petition on August 5, 2013. On December 18, 2013, this Court entered an Order confirming the Debtor's Chapter 13 Plan. The Plan, as confirmed, provides that "[a]ll property of the [Debtor] shall remain property of the estate for the duration of the plan."

According to the testimony at the hearing from Mark Hoffman,[2] Kam's Chief Executive Officer, the Debtor purchased a 2005 Isuzu Ascender LS 4 from Kam's on March 14, 2014. The purchase price of the vehicle was $6,995. The Debtor paid $600 as a down-payment, and the remainder of the purchase price was financed by Kam's, which retained a purchase-money security interest in the vehicle. At the time of sale, a representative of Kam's informed the Debtor that she could not buy the vehicle if she were "in bankruptcy," and asked her if she were in a pending bankruptcy case. However, the Debtor did not reveal to Kam's that this bankruptcy

---

[1]   Unless otherwise indicated, all references herein to "section" or "§" refer to a corresponding section of the Bankruptcy Code, and all references to the "Bankruptcy Code" relate to the corresponding sections of Title 11 of the United States Code.

[2]   The Debtor did not present any evidence contradicting any of Mr. Hoffman's statements, and the Court makes its findings of fact based on Mr. Hoffman's testimony, unless otherwise noted.

2

case was pending. Consequently, at the time of the sale, Kam's did not have actual knowledge of the Debtor's pending bankruptcy case.

On June 27, 2014, the Debtor filed an Amendment to her schedules to include the vehicle on her Schedule B and list Kam's as a creditor (with a $9,000 secured claim) on her Schedule D. The Amendment's Certificate of Service reflects service on Kam's by mail on June 27, 2014. On June 28, 2014, Kam's received a telephone call from the Debtor's counsel notifying Kam's of the Debtor's bankruptcy and the filing of the Amendment. Kam's received the Amendment by mail shortly thereafter.

At some time after purchase of the vehicle but prior to its repossession (the exact date is unclear from the record), the Debtor ceased making payments on the vehicle and ceased taking telephone calls from Kam's. Apparently on advice of counsel, Kam's repossessed the vehicle on July 22, 2014, nearly a month after receiving notice of the Debtor's bankruptcy case and receiving the Amendment. As of the date of the hearing, Kam's was still in possession of the vehicle.

The Debtor requests that the Court hold that Kam's repossession of the vehicle violated the automatic stay created by § 362(a) and that she accordingly be awarded damages in the amount of $1,500 and attorneys' fees in the amount of $500. The Debtor did not attend the hearing, and counsel for the Debtor introduced no evidence as to actual damages. The Debtor's counsel suggested at the hearing that the $500 attorneys' fees requested in the Motion were reasonable for bringing the Motion but provided no evidence on this point. Counsel for the Debtor also asked that punitive damages be assessed to the extent that actual damages did not reach the $1,500 requested in the Motion. Kam's, on the other hand, requested that the Court hold that no stay violation occurred or, alternately, that if a stay violation occurred, the Court not award damages.

### Conclusions of Law

Section 362 creates a stay that comes into existence automatically upon the filing of a petition for bankruptcy relief. 11 U.S.C. § 362(a) ("[A] petition filed under [§ 301] . . . operates

3

as a stay, applicable to all entities . . . ."). This stay prohibits, among other things, "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate[, and] any act to create, perfect, or enforce any lien against property of the estate." *Id.* § 362(a)(3), (4). Repossession of property of the estate in enforcement of a security interest is an act to obtain possession of, and enforce a lien against, property of the estate, constituting a violation of the stay. *See, e.g.*, *Burnett v. Danz Carz, Inc. (In re Burnett)*, No. 91-1096, 1992 WL 12004367, at *6 (Bankr. S.D. Ga. Feb. 3, 1992). Moreover, because under Georgia law a debtor retains legal title to a repossessed vehicle until it is sold, failure to return a repossessed vehicle is an exercise of control over property of the estate, constituting an ongoing violation of the stay. *See Motors Acceptance Corp. v. Rozier (In re Rozier)*, 376 F.3d 1323, 1324 (11th Cir. 2004).[3]

The automatic stay serves two chief purposes in an individual debtor case: (1) to protect the debtor, allowing her successful rehabilitation, reorganization, or fresh start; and (2) to protect creditors (especially unsecured creditors) from being prejudiced in the creditors' collective chaotic rush to obtain the debtor's assets.[4] To effectuate these purposes, Congress has provided that "an individual injured by any willful violation of [the automatic stay] shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1).

---

[3] This is true even if the repossession was lawful when conducted. *Rozier*, 376 F.3d at 1324.

[4] See the following excerpt from the legislative history to § 362:

> The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.
>
> The automatic stay also provides creditor protection. Without it, certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors. Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally. A race of diligence by creditors for the debtor's assets prevents that.

H.R. Rep. No. 95-595, at 340 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6296-97.

The principal questions before the Court in this matter are: (1) whether the vehicle was property of the estate, rendering Kam's repossession and continued control of the vehicle a stay violation; and (2) if a stay violation occurred, whether it was willful. If the Court determines that a willful stay violation has occurred, then it must decide the extent to which to award either damages or attorneys' fees, or both.

I.     **Vehicle as Property of the Estate**

The Debtor argues that a stay violation occurred because the vehicle was property of the estate pursuant to the Debtor's Plan, which provides that property of the estate does not vest in the Debtor. Kam's, on the other hand, argues that the vehicle—purchased after the confirmation of the Debtor's Plan—was not property of the estate and, accordingly, was not protected by the automatic stay. Neither argument, however, controls the Court's decision in this case.

The foundation for assessing the extent of the "estate" is laid in § 541(a). According to § 541(a), "[t]he commencement of a case under [§ 301] . . . creates an estate." *Id.* § 541(a). Sections 541(a) and (b) specify various categories of property that are included in, or excluded from, the estate. The most basic of the inclusive provisions includes in the estate "all legal or equitable interests of the debtor in property as of the commencement of the case." *Id.* § 541(a)(1). A voluntary case is commenced when an eligible debtor files a petition with the bankruptcy court. *Id.* § 301(a). Thus, the general rule—applicable to all bankruptcy Chapters—is that the estate consists of property that a debtor owned at the time she filed her case; however, because here the Debtor filed a Chapter 13 case, we must look also to the specific provisions in that Chapter.

In Chapter 13:

Property of the estate includes, in addition to the property specified in [§ 541] . . . all property of the kind specified in [§ 541] that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to [another Chapter], whichever occurs first.

*Id.* § 1306(a)(1). Under this statute it would appear that property acquired by a debtor at any time while her Chapter 13 case is pending will be property of the estate in that case and will be accordingly protected by the stay.

However, in a Chapter 13 case the court must also consider § 1327(b), which states that "[e]xcept as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor." *Id.* § 1327(b). In this case, the Plan provides that "[a]ll property of the [Debtor] shall remain property of the estate for the duration of the plan," so the default vesting provision in § 1327(b) does not apply.

Kam's argues that the Eleventh Circuit decision in *Telfair v. First Union Mortgage Corp. (In re Telfair)*, 216 F.3d 1333 (11th Cir. 2000), mandates a ruling by this Court that the vehicle is not property of the estate because it was acquired after confirmation of the Debtor's Plan, and that, therefore, no stay violation has occurred. In contrast, the Debtor distinguishes *Telfair* on the grounds that, unlike the plan in *Telfair*, her Plan contains a non-vesting provision, and that the vehicle therefore remains property of the estate and did not vest in the Debtor. As explained below, however, the holding in *Telfair* does not apply to this case.

In *Telfair*, the Eleventh Circuit addressed the tension between §§ 1306(a) and 1327(b) with respect to a debtor's post-confirmation earnings. The court, adopting what is known as the "estate transformation" approach to these code sections, held that "the plan upon confirmation returns so much of that property to the debtor's control as is not necessary to the fulfillment of the plan." *Id.* at 1340. In other words, property that is necessary for the execution of the plan remains property of the estate after confirmation until discharge, notwithstanding the language of § 1327(b). Although it may not have been expressly stated at the hearing, Kam's argument depends on the proposition that the vehicle is not "necessary to the fulfillment" of the Debtor's Plan, because it was acquired after confirmation of the Plan.

Contrary to Kam's assertions, however, *Telfair* does not require this Court to hold that the vehicle, acquired after confirmation of the Plan, belongs to the Debtor rather than the estate. The Eleventh Circuit definitively foreclosed Kam's argument in *Waldron v. Brown (In re*

6

*Waldron)*, 536 F.3d 1239 (11th Cir. 2008), where it held that property obtained after confirmation *never* vests in the debtor under § 1327(b) because such vesting is a singular event that happens, if at all, upon plan confirmation and affects only property in existence at that time.

In *Waldron*, after the confirmation of a joint Chapter 13 plan, one of the debtors obtained insurance claims for underinsured-motorist benefits. *Id.* at 1240. The bankruptcy court ruled that the insurance claims were part of the estate and, as such, should be disclosed on the debtors' schedules and administered as part of the bankruptcy estate. *Id.* at 1241. The debtors appealed this ruling, arguing that, at confirmation, "all of the property of the bankruptcy estate 'revested' in [them] by operation of [§ 1327(b)]." *Id.* at 1242 (quoting Debtors'/Appellants' Initial Brief at 8, *Waldron v. Brown (In re Waldron)*, 536 F.3d 1239 (11th Cir. 2008), No. 07-15081, 2007 WL 4865487, at *8).

The Eleventh Circuit rejected the debtors' argument "based on the plain language of [§ 1306(a)]," and held that the debtor's claims were property of the estate. *Id.* The court reasoned that "[§ 1327(b)] does not, as the [debtors] argue, automatically vest in the debtor assets acquired after confirmation." *Id.* at 1242. Rather, the court held that vesting under § 1327(b) is limited to assets that "exist at confirmation." *Id.* at 1243. The Eleventh Circuit expressly distinguished *Telfair*, noting that its application was limited to new property acquired *before* confirmation. *See id.* at 1242 ("We did not address in *Telfair* entirely new property interests acquired by the debtor after confirmation and unencumbered by any preexisting obligation.").

Thus, the court in *Waldron* held that assets obtained post-confirmation during a pending Chapter 13 case are property of the estate—even if the property of the estate vested in the debtor at confirmation under § 1327(b). Further, the court held that this property can be administered in the bankruptcy proceeding.

Although *Waldron*'s holding does not directly address the automatic stay, it necessitates the conclusion that property acquired post-confirmation by a Chapter 13 debtor is protected by the automatic stay. By its plain language, § 362(a) provides that the stay protects all "property of

7

the estate," and this Court is bound by the plain language of the statute unless "the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242 (1989) (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571 (1982)). The plain language of the statute is not demonstrably at odds with the drafters' intent, as demonstrated by the purposes of the automatic stay outlined above.

Accordingly, the Court holds that the automatic stay under § 362 applies to property interests acquired by a Chapter 13 debtor after confirmation of her plan but before the closure of her case.

Applying this holding to the facts before the Court, the Debtor obtained this vehicle March 14, 2014, which is after the date that her Plan was confirmed, December 18, 2013. As of July 22, 2014, the date of repossession, the Debtor's case had neither been closed, nor dismissed, nor converted. Therefore, the vehicle was property of the estate, and Kam's repossession and withholding of the vehicle violated the automatic stay.

The holding in *Waldron* renders superfluous the non-vesting provision in the Debtor's Plan as applied to the vehicle in this case because the vehicle was acquired post-confirmation. *Waldron* held that vesting under § 1327(b) is limited to a debtor's pre-confirmation property and has no effect on property acquired after confirmation. By logical extension, a non-vesting provision in a plan—the purpose of which is to preclude § 1327(b)'s default vesting provision— likewise has no effect on property acquired after confirmation. Under *Waldron*, all property acquired after confirmation remains property of the estate. *See Waldron*, 536 F.3d at 1243 (recognizing that, after confirmation, "the estate once again accumulates property by operation of [§ 1306(a)] until the case is 'closed, dismissed, or converted.'" (quoting *City of Chicago v. Fisher (In re Fisher)*, 203 B.R. 958, 962 (N.D. Ill. 1997)).[5]

---

[5] When referring to property acquired after confirmation, the Court does not intend to opine on the effect, if any, that a post-confirmation plan modification would have on vesting of property in a debtor.

8

Kam's makes several additional arguments that the Court finds unpersuasive.[6]

First, Kam's emphasizes that it could have immediately prevailed on a relief-from-stay motion, had such a motion been brought. Even if Kam's is correct in this assertion (on which assertion the Court does not here opine), Kam's would not be insulated from the application of the plain language of § 362(a). *See Lightfoot v. Borkon (In re Lightfoot)*, 399 B.R. 141, 152 (Bankr. E.D. Penn. 2008) ("By [the stay violator's] own assessment, the [debtor] would not have survived a motion for stay relief. [The debtor] and her husband were in arrears and the [collateral was] not insured as required. Rather than seeking relief, the [stay violator] took matters into his own hands by keeping and selling the [collateral] he had already repossessed. His conduct demonstrates a disregard for the law which the [c]ourt cannot countenance." (internal citations omitted)); *see also Rutherford v. Auto Cash, Inc. (In re Rutherford)*, 329 B.R. 886, 891 (Bankr. N.D. Ga. 2005) (rejecting similar argument in context of lack of adequate protection).

Second, Kam's argues that the stay should not apply because the Plan, and its non-vesting provision, does not act as res judicata on Kam's because Kam's had neither interest in, nor notice of, the Plan prior to its confirmation. The Court need not address this argument because, as noted above, it is not the Plan's non-vesting provision, but rather the express provisions of the Bankruptcy Code (particularly §§ 1306(a) and 1327(b)) as interpreted by the Eleventh Circuit in *Waldron*, which render the vehicle property of the estate and thus protected by the automatic stay.

---

[6] In addition to these arguments, both the Chapter 13 trustee's office and Kam's argue that a stay violation (or damages for a stay violation) should not be found in this case because the Debtor purchased this vehicle and incurred a substantial debt obligation without obtaining the standing Chapter 13 trustee's prior permission. Although it is advisable to obtain the trustee's permission before incurring new post-petition debt, neither the trustee nor Kam's could point to any Code provision or Bankruptcy Rule that requires such prior permission nor articulate why violation of any such provision (if it exists) by the Debtor would negate Kam's liability for violating the stay. The trustee tangentially referenced § 1305, but as the trustee conceded, that section is inapplicable because it requires advance trustee approval of a debtor's obligation only where a creditor is seeking payment out of a debtor's plan, a situation we do not have. *See* 11 U.S.C. § 1305(a)(2), (c).

Third, Kam's argues that the Debtor's misrepresentation in failing to disclose her bankruptcy at the time of the vehicle sale somehow vitiates the protections of the automatic stay. This argument is also without merit. It asks the Court to ignore the plain language of § 362. The Debtor's misrepresentation, while distasteful, does not vitiate the protection of the automatic stay. *See, e.g.*, *Graham v. Graham (In re Graham)*, No. 411-090, 2012 WL 1099886, at *4 (S.D. Ga. Mar. 30, 2012) (holding that debtor's fraud does not estop debtor's assertion of stay violation).[7]

Accordingly, the Court holds that Kam's violated the stay.

## II.   Willfulness of Violation

Willfulness is established if it is shown that the creditor "(1) knew the automatic stay was invoked and (2) intended the actions which violated the stay." *Jove Eng'g, Inc. v. I.R.S. (In re Jove Eng'g, Inc.)*, 92 F.3d 1539, 1555 (11th Cir. 1996). Knowledge of the invocation of the stay requires only knowledge of the bankruptcy; it does not require either specific knowledge of the automatic stay itself or comprehension of its legal effect. *Ballard. v. Freedom Auto Plaza (In re Ballard)*, No. 10-71415, 2010 WL 4501891, at *4 (Bankr. M.D. Ga. Nov. 2, 2010) (citing *Spinner v. Cash In A Hurry (In re Spinner)*, 398 B.R. 84, 94 (Bankr. N.D. Ga. 2008)); *see also In re Esposito*, 154 B.R. 1011, 1014 (Bankr. N.D. Ga. 1993) ("A 'willful violation' of the stay, as distinguished from a 'technical violation,' occurs when the creditor violates the stay with knowledge of the bankruptcy.").

Kam's argues, albeit somewhat indirectly, that any violation of the stay was not willful because it was based on a good faith belief that the stay was inapplicable, based on the advice of counsel. This argument runs counter to well-established case-law.

Whether a creditor believes that the automatic stay is inapplicable to its conduct is irrelevant to the question of whether a stay violation has occurred. *See Roche v. Pep Boys, Inc. (In re Roche)*, 361 B.R. 615, 623 (Bankr. N.D. Ga. 2005). This is true even if such belief was

---

[7]   The Court does not intend to suggest that the Debtor, or any debtor, has a "free pass" to engage in intentional misrepresentations regarding her bankruptcy status. A party injured by such a misrepresentation is free to assert claims or to seek other remedies that may be available to it under applicable law.

10

based on the advice of counsel. *Tyree v. Guzman (In re Tyree)*, No. 10-68797, 2010 WL 4008300, at *3 (Bankr. N.D. Ga. Sept. 27, 2010) ("Neither a good faith belief that the creditor had a right to the property nor good faith reliance on the advice of counsel is relevant.").

Here, the evidence before the Court establishes that Kam's had knowledge prior to repossession that the Debtor was in a pending Chapter 13 bankruptcy case. Before repossession, Kam's had been served with the Debtor's amended schedules listing the vehicle as an asset and listing Kam's as a secured creditor, and Kam's had been notified of the bankruptcy case by a telephone call from the Debtor's counsel. Further, it is clear that Kam's intended the actions that violated the stay, namely, repossessing the vehicle and not returning it to the Debtor. As shown by the case-law cited above, Kam's reliance on counsel's advice and its good faith belief that the stay was inapplicable are irrelevant to the question of the willfulness of its violation.

Thus, the Court holds that Kam's willfully violated the stay by repossessing and failing to return the vehicle.

### III.   Damages

The Debtor requests an award of damages in the amount of $1,500 and attorneys' fees in the amount of $500 for the bringing of the subject Motion.

A.   *Actual Damages*

Section 362(k) provides for recovery of actual damages. However, the Debtor has the burden to prove her actual damages with reasonable certainty. *Thomason v. Chestatee Cmty. Ass'n, Inc. (In re Thomason)*, 493 B.R. 890, 902 (Bankr. N.D. Ga. 2013) ("With respect to damages, [the debtors] must prove same with 'reasonable certainty,' and they 'must not be speculative or based on conjecture.'" (internal citations omitted) (quoting *Grine v. Chambers (In re Grine)*, 439 B.R. 461, 469 (Bankr. N.D. Ohio 2010))); *Cousins v. CitiFinancial Mortg. Co. (In re Cousins)*, 404 B.R. 281, 290 (Bankr. S.D. Ohio 2009) ("[D]amages must still be proven and the award must be reasonable and supported by the evidence.").

At the hearing, the Debtor offered no evidence that she suffered actual damages, so the Court awards no compensatory damages.

11

B. *Attorneys' Fees*

Attorneys' fees must be proven with reasonable certainty and be shown to be reasonable and necessary. *Castillo v. Three Aces Auto Sales (In re Castillo)*, 456 B.R. 719, 727 (Bankr. N.D. Ga. 2011) ("The [c]ourt must review the services performed . . . to determine whether the services were reasonable and necessary."); *see also Thomason*, 493 B.R. at 902 (stating that because all damages, including attorneys' fees, must be proven with reasonable certainty, "the [c]ourt should be presented with an adequate, itemized basis to analyze the amount sought as attorney's fees so that a determination can be made concerning their reasonableness and their relation to addressing the stay violations at issue.").

At the hearing, the Debtor's counsel suggested that the $500 attorneys' fees requested in the Motion were reasonable for bringing the Motion. However, the Debtor's counsel did not provide sufficient detail for the Court to assess whether these fees were reasonable and necessary. Therefore, the Court will allow the Debtor's counsel twenty-one (21) days to file a detailed affidavit as to the services rendered in this matter. Once any such affidavit is filed, Kam's shall have twenty-one (21) days within which to file an objection to the award of the fees requested, and absent such an objection, all arguments to the contrary shall be deemed waived. If Kam's files such an objection, the Court shall consider the objection and may hold a further hearing on the reasonableness and necessity of the requested fees. Otherwise, the Court may award a judgment against Kam's for the attorneys' fees requested without the need for such a hearing.

C. *Punitive Damages*

In addition to compensatory damages and attorneys' fees, the Debtor seeks the imposition of punitive damages in the amount of the difference between the $1,500 requested in the Motion and the Debtor's actual damages.

"Punitive damages are appropriate only when the creditor has acted maliciously or in bad faith." *Rutherford*, 329 B.R. at 898. Courts generally consider the following factors, or variations thereof, in assessing requests for a punitive damages award: (1) the nature of the

creditor's conduct; (2) the nature and extent of harm to the debtor; (3) the creditor's ability to pay; (4) the creditor's motives; and (5) any provocation by the debtor. *See, e.g.*, *Roche*, 361 B.R. at 624.

In this case, the balance of relevant factors weighs against an award of punitive damages. While Kam's violation of the stay was willful, the uncontroverted evidence was that, on the advice of counsel, Kam's believed its conduct was not in violation of the stay. Moreover, due to the Debtor's failure to attend and testify at the hearing, the Court was unable to find any damages to the Debtor (or even consider evidence with respect thereto) other than her counsel's general statements concerning attorneys' fees. Another factor on which no evidence was offered is Kam's ability to pay punitive damages. And finally, although the Debtor may not have provoked the stay violation in a direct sense, the Court finds significant the uncontroverted evidence that, when purchasing the automobile, the Debtor falsely represented to Kam's that she was not a debtor in a bankruptcy case.

The Court therefore declines to award any punitive damages.

An Order in accordance with this Opinion will be entered on this date.

END OF DOCUMENT